UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KEVIN YEE,

    Plaintiff,

v.                                             No. 3:09CV00311(DJS)

ROOFING BY CLASSIC
RESTORATIONS, BOGA DAVIDSON
and SANTAFE TILE CORP.,

    Defendants.

## MEMORANDUM OF DECISION AND ORDER

The plaintiff, Dr. Kevin Yee, brings this action against the defendants, Roofing by Classic Restorations ("RCR"), Boga Davidson, and SantaFe Tile Corporation, alleging violations of New Jersey law in connection with the installation of a tile roof on his New Jersey residence.[1]  Specifically, Yee alleges that RCR and SantaFe violated the New Jersey Products Liability Act, N.J.S.A. § 2A:58C-1 et seq. (first count), and that RCR and Davidson violated the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 to -20 (fourth count).  Yee also alleges common law breach of contract and negligence by RCR (second and third counts), and negligence by Davidson (fifth count).  Yee invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1332 (2006).

---

[1] Yee's complaint also alleged claims individually against Victoria Jackson—RCR's president and director.  On July 26, 2010, however, Yee stipulated to the voluntary dismissal of his claims against Jackson.  (Dkt. # 46.)

Now at bar is SantaFe's motion to dismiss for lack of personal jurisdiction, and Yee's motion for leave to amend his Complaint and join Classic Slate & Tile, Inc., as a new party defendant. For the following reasons, SantaFe's motion (dkt. # 14) is GRANTED, and Yee's motion (dkt. # 49) is GRANTED.

## I. BACKGROUND[2]

Yee is an individual residing in Englewood Cliffs, New Jersey. RCR is a Connecticut corporation with its principal place of business in Stamford, Connecticut. Davidson is an individual residing in Norwalk, Connecticut, who serves as vice-president and managing officer of RCR's activities in New Jersey. SantaFe is a Florida corporation with its principal place of business in Medley, Florida, which designs, manufactures, and distributes roofing components. Classic Slate & Tile is a Georgia corporation with its principal place of business in Atlanta, Georgia, which designs, manufactures, and distributes roofing components.

On or about April 28, 2004, Yee hired RCR to install a tile roof on his newly constructed house in Englewood Cliffs. Yee and RCR signed a written contract which specified the tiles to be installed as "'Spanish Tiles' by SantaFe—'Savannah Green' in color." This specific type of tile had been recommended to Yee by Davidson. The agreed upon price for RCR's work was

---

[2] Unless otherwise noted, the following is drawn from the parties' submissions relating to the motions at bar.

$137,160.00.

In August 2004, RCR obtained the tiles specified under the contract and installed them on Yee's house. RCR's roofing work was completed in the summer of 2004.

In the spring of 2008, Yee noticed that some tiles appeared to be failing. Specifically, he observed that the outer coating on several dozen tiles was visibly degrading. He asked RCR to address and rectify this problem. RCR inspected the tiles twice. Thereafter, RCR informed Yee that it was attempting to communicate with SantaFe about the problem. Yee received no further communication from RCR.

In September 2008, Yee's lawyer contacted SantaFe directly. In so doing, he learned that SantaFe, as a matter of company policy, did not sell the particular roof tiles that had been installed on Yee's house in northern U.S. areas where weather conditions customarily include a freeze-thaw cycle, and that any sale of such tiles by SantaFe's distributors in these areas were to be made on an "as is, where is basis." Yee had not been informed of these policies. Yee's lawyer also learned that SantaFe had no record of warranty for the specific tiles that RCR had installed on Yee's house.

In October 2008, Yee again contacted RCR, demanding a comprehensive remedy for the roof system failure. RCR never responded.

In November 2008, Yee hired an independent roofing expert to inspect his roof. The expert found that: (1) The roof tiles appeared to be failing as a result of the freeze-thaw cycle; (2) the roof tiles, as well as the installed hips and ridge caps, were not proper for installation in a northern climate; and (3) some failing tiles had been field painted, which, he opined, was an inappropriate repair method. Based on these findings, Yee concludes that the SantaFe tiles must be removed and replaced with proper tiles for the New Jersey climate at a cost of approximately $270,000.00, and that other deficiencies in the roofing work performed by RCR require further repairs at a cost of approximately $45,000.00. Yee subsequently filed this action.

## II. ANALYSIS

The motions at bar both relate to Yee's allegations against SantaFe—the tiles' manufacturer. Specifically, Yee's Complaint alleges that RCR "purchased the roof tile materials from SantaFe," (dkt. # 1, ¶ 9); that SantaFe never "provided [Yee] with a Manufacturer's Warranty for the SantaFe roof tile materials," (dkt. # 1, ¶ 15); that SantaFe never "advised [Yee] at any time prior to 2008 that the subject SantaFe roof tile materials were not intended to be used in 'northern' climates[ ] such as New Jersey" or that "the subject SantaFe roof tiles were being provided on an 'AS IS, WHERE IS basis,'" (dkt. # 1, ¶ 16);

4

that the necessary repairs are "solely the result of deficient materials provided by RCR and manufactured by SantaFe," (dkt. # 1, ¶ 21) and that SantaFe has "failed to respond to [Yee's] most recent request that [it] address and rectify the failed roofing materials," (dkt. # 1, ¶ 18).  Based on these factors, Yee claims that SantaFe is liable to him under the New Jersey Products Liability Act, N.J.S.A. § 2A:58C-1 et seq.

In response, SantaFe now moves to dismiss for lack personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

### A. Personal Jurisdiction over SantaFe

In order to survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff "must make a prima facie showing that jurisdiction exists." Penguin Group (USA) Inc. v. American Buddha, 609 F.3d 30, 34 (2d Cir. 2010).  Where, as here, the parties have conducted discovery regarding the defendant's contacts with the forum state but no evidentiary hearing has been held, the plaintiff's prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010) (quotation marks omitted).  Any affidavits and supporting materials submitted in this context are to be construed in the light most favorable to the

plaintiff, and all doubt is to be resolved in the plaintiff's favor. Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010).

A district court's personal jurisdiction is governed by the law of the state in which the court sits. Spiegel v. Schulmann, 604 F.3d 72, 76 (2d Cir. 2010). In Connecticut, personal jurisdiction exists over a nonresident defendant where: (1) a relevant long-arm statute reaches the defendant; and (2) the court's exercise of personal jurisdiction does not offend the defendant's Fourteenth Amendment right to Due Process. Kenny v. Banks, 289 Conn. 529, 533, 958 A.2d 750, 752 (2008); Bensmiller v. E.I. Dupont de Nemours & Co., 47 F.3d 79, 81 (2d Cir. 1995).

Here, Yee argues that Connecticut's corporate long-arm statute, Conn. Gen. Stat. § 33-929(e), reaches SantaFe. (Dkt. # 33, p. 2.)[3] The Connecticut Supreme Court has explained that § 33-929(e), "vests [Connecticut's] courts with jurisdiction over any foreign corporation that transacts business in this state without first having obtained a certificate of authority from the secretary of the state in accordance with § 33-920(a) when the cause of action arises out of such business." Ryan v.

---

[3] General Statutes § 33-929(e), in relevant part, states that "[e]very foreign corporation which transacts business in this state in violation of section 33-920 shall be subject to suit in this state upon any cause of action arising out of such business . . . ." General Statutes § 33-920(a), in relevant part, states that "[a] foreign corporation . . . may not transact business in this state until it obtains a certificate of authority from the Secretary of the State . . . ."

6

Cerullo, 282 Conn. 109, 128, 918 A.2d 867, 879 (2007).  This requires a two-part analysis.  First, the Court must examine "the complete factual picture" in order to determine whether SantaFe transacted business in Connecticut without authorization to do so as required by § 33-920(a).  Id.  If that question resolves in the affirmative, the Court must then determine whether Yee's claim against SantaFe arose out of such business.  Id.

    With respect to the first question, it is undisputed that SantaFe has not received a certificate from the Secretary of the State of Connecticut authorizing it to transact business in this State.  The parties, however, disagree as to whether SantaFe has "transacted business" in Connecticut.  Specifically, Yee argues that "SantaFe transacted business in Connecticut by virtue of its direct and repeated delivery of the allegedly defective tiles to RCR."  (Dkt. # 34, p. 5.)  In support, Yee submits various discovery materials that show how RCR obtained the roofing components that were ultimately installed on his house.  These, however, unambiguously show that the particular tiles at issue were not purchased directly from SantaFe, but rather, were obtained by RCR through Classic Slate & Tile, an independent roofing components dealer.  (See dkt. # 34-3, Interrog. Resp. #

7

17, 19, 22.)[4]  Given this factor, SantaFe cannot be found to have "transacted business" in Connecticut.

General Statutes § 33-920(b) provides a non-exhaustive list of activities that "do not constitute transacting business" for the purposes of § 33-920(a).  <u>Ryan</u>, 282 Conn. at 129 n.18, 918 A.2d at 880 n.18.  Among the activities listed are "selling through independent contractors," and "obtaining orders, whether by mail or through employees or agents or otherwise, if the orders require acceptance outside [Connecticut] before they become contracts."  Conn. Gen. Stat. § 33-920(b).  Similarly, Connecticut's courts have long held that foreign corporations do not "transact business within the state" merely by selling through independent distributors.  <u>See</u> <u>Pennsylvania-Dixie Cement Corp. v. H. Wales Lines Co.</u>, 119 Conn. 603, 612, 178 A. 659 (1935); <u>Walter v. Hotel Brunswick</u>, 3 Conn. Cir. Ct. 398, 216 A.2d 212 (1965).  <u>See, e.g.</u>, <u>Hospitality Systems, Inc. v.

---

[4] Yee's submissions also unambiguously show that delivery of the tiles was arranged by Classic Slate & Tile, but are inconclusive as to the actual place of delivery.  (<u>See</u> dkt. 34-3, Interrog. Resp. # 21, 22.)  Specifically, they contain statements suggesting delivery to RCR in Connecticut, as well as statements suggesting delivery to the "job site"—Yee's house in New Jersey.  (<u>See</u> dkt. # 34-3, Interrog. Resp. # 21, Doc. Req. Resp. # 23.)  Yee specifically calls the Court's attention to one of RCR's interrogatory responses stating that Classic Slate & Tile "delivered the tiles to Connecticut, as illustrated in two freight documents in SantaFe's possession in which SantaFe is listed as the 'Shipper' and RCR of Connecticut is listed as the 'Consignee.'"  (Dkt. # 34-3, Interrog. Resp. # 17.)  The "two freight documents" to which Yee refers are FedEx freight delivery receipts dated January 6, 2005, and May 3, 2005, respectively.  (<u>See</u> dkt. # 34-5, 34-6.)  These FedEx receipts, however, are necessarily unrelated to the specific tiles that were installed on Yee's house because they evidence a shipment of tile that occurred at least five months after RCR completed the work on Yee's roof in August of 2004.  (<u>See</u> dkt. # 34-3, Interrog. Resp. # 21.)

Oriental World Trading Co. LTD, 26 Conn. L. Rptr. 401, 2000 WL 177441 (Conn. Super. Ct. Feb. 1, 2000); Natale v. Development Associates, Inc., 9 Conn. L. Rptr. 432, 1993 WL 284676 (Conn. Super. Ct. July 23, 1993).

    Here, SantaFe never directly sold any of its products to customers in Connecticut, never solicited or advertised in Connecticut, and never maintained bank accounts, sales representatives, or offices in Connecticut.  (Dkt. # 14-2, pp. 5-6.)  SantaFe's alleged involvement in this case does not extend beyond having sold its product to RCR through Classic Slate & Tile, an independent dealer, and thus, is wholly encompassed within the statutory exclusions to "transacting business" within the meaning of § 33-920(a).  Under these circumstances, SantaFe cannot be reached by § 33-929(e), and there is no need to assess whether Yee's claim actually arose out of business transacted by SantaFe in Connecticut, or whether this Court's exercise of personal jurisdiction respects SantaFe's right to Due Process.  Accordingly, SantaFe's motion to dismiss must be granted.

### B. Joinder of Classic Slate & Tile

    Yee next explains that his jurisdiction-related discovery has revealed Classic Slate & Tile's role with respect to this action, and asserts that Classic Slate & Tile "is or may be liable to [him]."  (Dkt. #49, p. 3.)  Accordingly, Yee now moves

9

for leave to amend his Complaint and join Classic Slate & Tile as a new defendant pursuant to Rules 15, 20, and 21 of the Federal Rules of Civil Procedure.

Rule 15 provides that leave to amend the pleadings should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Within the Second Circuit, courts generally "allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." AEP Energy Services Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 725 (2d Cir. 2010). Other factors may also be considered. See Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"); AEP Energy, 626 F.3d at 725 ("Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party.").

Here, the non-moving defendants have expressed no objection to Classic Slate & Tile's joinder, and there otherwise is no suggestion of prejudice or bad faith warranting denial of the motion to join. Accordingly, Yee's motion is granted.

**III. CONCLUSION**

For the foregoing reasons, SantaFe's motion to dismiss for lack of personal jurisdiction **(dkt. # 14)** is **GRANTED**, and Yee's motion for leave to amend his Complaint and join Classic Slate & Tile, Inc., as a new party defendant **(dkt. # 49)** is **GRANTED**. Judgment in favor of defendant SantaFe Tile Corporation shall enter on all claims.  Yee is directed to file the Amended Complaint **no later than thirty (30) days from the date of this order**, and to serve it upon defendant Classic Slate & Tile in accordance with the Federal Rules of Civil Procedure.

SO ORDERED this 28th day of February, 2011.


_____**/s/DJS**_____
            **DOMINIC J. SQUATRITO**
         **UNITED STATES DISTRICT JUDGE**